# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GENE MITCHELL OLIVIER** | **CIVIL ACTION NO. 6:13-cv-0112** |
| **LA. DOC #526717** | |
| **VS.** | **SECTION P** |
| | **JUDGE HAIK** |
| **WARDEN HOWARD PRINCE** | **MAGISTRATE JUDGE HANNA** |

## <u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on January 16, 2013 by *pro se* petitioner Gene Mitchell Olivier.[1] Petitioner is an inmate in the custody of the Louisiana Department of Corrections incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. Petitioner attacks his 2007 convictions for aggravated second degree battery and aggravated assault of a peace officer with a firearm entered by the Sixteenth Judicial District Court for St. Martin Parish, Louisiana, for which petitioner was sentenced to consecutive sentences totaling twenty-five years imprisonment.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

---

[1]While his petition was pending initial review, Overton T. Harrington enrolled as counsel of record for petitioner. [rec. docs. 11 and 13]. Thereafter, this Court received notice that Mr. Harrington passed away. [rec. doc. 35]. Accordingly, it appears that petitioner is presently proceeding *pro se*.

## STATEMENT OF THE CASE

Petitioner was charged with three counts of attempted first degree murder. The charges stemmed from an October 25, 2006 incident wherein petitioner shot two St. Martin Parish Sheriff's Office deputies with a shotgun,  Deputy Larry Wiltz and Deputy Larry Landry, and fired the weapon at Deputy Waverson Guidry, who was seeking cover.  Deputies Wiltz and Guidry  had been called to investigate a gun complaint and Deputy Landry responded to the scene after Deputy Wiltz had been shot.

On August 8, 2007, petitioner pled guilty to two counts of aggravated second degree battery and one count of aggravated assault on a peace officer with a firearm.  On November 15, 2007, petitioner was sentenced to serve consecutive sentences totaling twenty-five years imprisonment, ten years for each of the aggravated second degree battery convictions and five years for the aggravated assault on a peace officer with a firearm conviction.

On December 30, 2008, the Louisiana Third Circuit Court of Appeal affirmed petitioner's convictions and sentences.  *State v. Gene Mitchell Olivier*, 2008-520, 2008 WL 5423936 (La. App. 3rd Cir. 2008).  The Third Circuit's unpublished opinion reveals that petitioner argued that his sentences were

2

unconstitutionally excessive.[2]  Petitioner's request for rehearing was denied on February 11, 2009. [rec. doc. 33-1, pg. 82].  On November 20, 2009, petitioner's request for review in the Louisiana Supreme Court was denied without comment. *State v. Gene Mitchell Olivier*, 2009-0528, 25 So.3d 786 (La. 2009).  Petitioner did not seek further direct review in the United States Supreme Court.

On March 5, 2010, petitioner filed a Motion to Correct an Illegal Sentence in the trial court arguing that under Louisiana law, his sentence was improperly imposed to run consecutively rather than concurrently. [rec. docs. 18, pg. 26-34; 33-1, pg. 114-121].  That motion was denied by the trial court on March 16, 2010. [rec. docs. 18, pg. 35; 33-1, pg. 122].  Petitioner's request for writs in the Third Circuit was denied on November 4, 2010.  *State v. Olivier*, No. KH 10 – 00631 (La. App. 3rd Cir. 2010). [rec. docs. 18, pg. 51; 33-1, pg. 126].[3]  The Third Circuit found no error in the trial court's denial, that the claim was repetitive under Louisiana Code of Criminal Procedure article 930.4(A) and that the sentences imposed were not illegal citing *State v. Moore*, 640 So.2d 561 (La. App. 3rd Cir.

---

[2]The claim was asserted in the state courts solely under the Louisiana Constitution, not the Eighth Amendment to the United States Constitution. [*See e.g.* rec. docs. 18, pg. 11-25; 33-1, pg. 348-362].

[3] Petitioner claims that he sought further review of his motion in the Louisiana Supreme Court and that relief was denied on March 3, 2011 [ *See* rec. doc. 4, p. 2].  However, the published jurisprudence of the State of Louisiana reveals no writ denial by the Louisiana Supreme Court with respect to this Motion.

1994), *writ denied*, 651 So.2d 858 (La. 1995) and *State v. Gedric*, 741 So.2d 849 (La. App. 3rd Cir. 1999), *writ denied*, 751 So.2d 239 (La. 1999).

On March 7, 2011, petitioner filed an application for post-conviction relief in the trial court. He asserted the following claims for relief: (1) that his guilty plea was invalid because the trial court failed to impose sentences in accordance with his Plea Agreement mandating that he be sentenced to 11 years or a minimum of 5 years with rehabilitation; (2) ineffective assistance of counsel because counsel (a) mislead petitioner to plead guilty, informing petitioner that there was a plea agreement as to the sentence which would be imposed, and failing to object to the trial court's failure to adhere to the sentence contained in his Plea Agreement, (b) allowed petitioner to plead guilty in violation of his rights against double jeopardy, and (c) failed to investigate the facts demonstrating a lack of evidence to support the charges; (3) that the trial judge should have recused himself; and (4) the cumulative effect of these errors denied petitioner his equal protection and due process rights.  [rec. docs. 18, pg. 56-68; 33-1, pg. 135-156].   The trial court denied this Application on March 30, 2011, noting amongst other reasons, that at his plea hearing petitioner "indicated that he was entering the plea agreement willingly and voluntarily and that no threats or promises other than the plea agreement had been made to him" and that "[a] valid guilty plea operates as a

4

waiver of all non-jurisdictional defects in proceedings that take place *prior* to the

entry of the plea" and that "ineffective assistance of counsel is a non-jurisdictional

defect." [*Id.* at pg. 55 (citations omitted); rec. doc. 33-1, pg. 132].

On May 30, 2012, the Louisiana Third Circuit Court of Appeal denied

petitioner's request for writs as follows:

> Relator failed to prove there was a plea agreement as to the sentences
> he would receive or that he was lead to believe he would receive a
> specific sentence.  La. Code Crim. P. art. 930.2.  There was no double
> jeopardy violation, as each count Relator pled guilty to involved a
> different victim.  Relator failed to allege that but for counsel's
> deficiencies, he would not have pled guilty, consequently, failing to
> meet his burden of proof under *Strickland v. Washington*, 466 U.S.
> 668, 104 S.Ct. 2052 (1984).  Further, Relator did not prove he first
> filed a motion to recuse in the trial court or present proof of the claim
> alleged.  Uniform Rules - Courts of Appeal, Rule 1-3; La. Code Crim.
> P. art. 930.2

[rec. docs. 18, pg. 53; 33-1, pg. 204, *State v. Olivier*, KH 11-00640 (La. App. 3rd

Cir. 5/30/12)].  On November 2, 2012, the Louisiana Supreme Court denied writs

without comment. *State ex rel. Gene M. Olivier*, 2012-KH-1361, 99 So.3d 664

(La. 2012).

Petitioner signed the instant petition on January 11, 2013 and the petition

was filed by the Clerk of this Court on January 16, 2013.  In his original and

supplemental petitions and memorandums in support thereof, petitioner asserts the

following claims for relief: (1) that his sentences are unconstitutional,

disproportionate, excessive and constitute double jeopardy (because the sentences should have been run concurrently); (2) that he received ineffective assistance of trial counsel because counsel failed to pursue an insanity defense; (3) that his guilty plea was involuntary, unintelligent, and unknowingly entered due to ineffective assistance of counsel because counsel (a) failed to advise petitioner that he would have been exonerated from criminal liability on grounds of insanity, and (b) advised petitioner that he would receive no more than an 11 years sentence in exchange for his guilty plea.  Petitioner additionally argues that he was denied post-conviction counsel, thereby constituting cause for any procedurally defaulted ineffective assistance of counsel claims pursuant to *Martinez v. Ryan,* 132 S.Ct. 1309 (2010) and that he received ineffective assistance of appellate counsel because counsel failed to raise ineffective assistance of counsel claims on direct appeal.  [*See* rec. docs. 1, 4, 5 and 15]. The Court does not construe petitioner's pleadings as asserting substantive claims for relief with respect to these latter two arguments, but rather as merely providing an excuse for the procedural default of his substantive claims.

The State has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief, to which petitioner filed a Reply.  [rec. docs. 28 and 31]. This Report and Recommendation follows.

6

# LAW AND ANALYSIS

**Timeliness of Claims**

The State argues that petitioner's first and second claims for relief, that his sentences are unconstitutional, disproportionate, excessive and constitute double jeopardy (because the sentences should have been run concurrently) and that he received ineffective assistance of trial counsel because counsel failed to pursue an insanity defense, are time-barred by the one year limitation period set forth in 28 U.S.C. § 2244.  More specifically, the State argues that petitioner should have raised these claims within one year of the decision of the Louisiana Supreme Court on direct appeal, and one year of his sentencing, respectively.  That argument is not well taken.

The one year limitation imposed by § 2244(d) begins to run "from the latest of" four triggering specified dates.  28 U.S.C. § 2244(d)(1).  That limitations period is tolled, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  An application for post-conviction or other collateral review includes any  "form of review that is not part of the direct appeal process." *Wall v. Kholi*, 562 U.S. 545, 131 S.Ct. 1278 (2011). The pertinent judgment refers to the state court judgment authorizing the prisoner's

confinement.  *See Magwood v. Patterson,* 561 U.S. 320, 333-335, 130 S.Ct. 2788,
2797-2799 (2010) *citing* 28 U.S.C. § 2254(b)(1).

Petitioner's judgment of conviction did not become final until February 20,
2010, after the delay for filing a writ of certiorari in the United States Supreme
Court on direct appeal, that is, ninety days after the Louisiana Supreme Court
denied further direct review on November 20, 2009. *See* Supreme Court Rule 13;
*Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999);  *Roberts v. Cockrell,* 319 F.3d 690,
694 (5th Cir. 2003) *citing Flanagan*, 154 F.3d at 197; *Clay v. United States*, 123
S.Ct. 1072, 1077 at fn. 3 (2003). Thereafter, petitioner filed a Motion to Correct
Illegal Sentence, which pended from March 5, 2010 through November 4, 2010,
and an Application for Post-Conviction Relief which pended from March 7, 2011
through November 2, 2012, both of which tolled the limitation period "with
respect to the pertinent judgment."  This petition was filed on January 16, 2013
less than one un-tolled year later.  To adopt the State's argument in this case would
therefore render the tolling provision in § 2244(d)(2) superfluous and
meaningless.  This petition, as well as the claims raised in this petition, are timely
filed.

### *Standard of Review*

This *habeas* petition was filed on January 16, 2013; therefore the standard
of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the

Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[4] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and  *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[5] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[5]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

> **(2)** resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5ᵗʰ Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing  Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

## I. Constitutionality of Sentences

Review of petitioner's filings in the Louisiana state courts on direct appeal

12

reveal that petitioner did not raise his excessive sentencing claims under federal law, or more specifically, under the Eighth or Fifth Amendment to the United States Constitution.  There is no mention or argument of any federal constitutional issue which could have alerted the state courts that his claim could arise under federal law.  Rather, this issue was raised in the state courts solely on state law grounds, namely, under Article I, § 20 of the Louisiana Constitution.[6]  The Louisiana Third Circuit Court of Appeals, the last state court to render a decision on the merits, therefore analyzed this claim under Louisiana standards.  *State v. Gene Mitchell Olivier*, 2008-520, 2008 WL 5423936 (La. App. 3rd Cir. 2008).[7]

---

[6]*See* fn. 2, *supra.*
　　　Petitioner argued a violation of Article 1, § 20 of the Louisiana Constitution, asserting that his sentence was excessive for a first felony offender and a lesser sentence would have met the needs of society and would have been sufficient to ensure the rehabilitation of petitioner, and that the trial court failed to adequately state and properly analyze the aggravating and mitigating circumstances for imposition of his sentence as required by Louisiana Code of Criminal Procedure article 894.1, and failed to provide sufficient particularized justification for the imposition consecutive sentences as required by Louisiana jurisprudence interpreting Louisiana Code of Criminal Procedure article 883. [rec. doc. 33-1, pg. 348-362].

[7]The Third Circuit rejected petitioner's claim holding, in pertinent part, as follows:
　　　We find the trial court's reasons for sentencing  sufficiently particularized a justification for ordering consecutive sentences. The trial court noted Defendant's actions posed a serious threat to the victims, and it was established at trial Deputy Wiltz would have likely died if he were not wearing a protective vest. The trial court also specifically stated he was not assured that Defendant's conduct would not recur in the future. Lastly, the trial court noted the significant benefit Defendant received from his plea agreement.

　　　The total time of incarceration of twenty-five years is not grossly disproportionate to the severity of the crimes as to shock our sense of justice. The sentence makes a measurable contribution to acceptable penal goals and is not simply a needless imposition of pain and suffering. . . .
*Id.* at *5

Under these circumstances, petitioner's federal Constitutional sentencing claims were never properly exhausted in the Louisiana state courts and are now procedurally defaulted.[8]

To the extent petitioner is arguing that his sentences are excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the propriety of petitioner's consecutive sentences under Louisiana state law. *See Benoit v. Cain*, 2009 WL 4572903, *21 (W.D. La. 2009) *citing Smith v. Cain*, 2007 WL 2461663, *7 (E.D. La. 2007) and *Simms v. Cain*, 2008 WL 624073, *17 (E.D. La. 2008).

Nevertheless, given that petitioner suggests that he was actually innocent of the crimes of which he was convicted due to his alleged insanity at the time of the

---

[8]To the extent that the Louisiana Constitution is framed after the United States Constitution, *albeit* affording Louisiana citizens greater rights than those under its federal counterpart, that argument is unavailing.  It is clear that petitioner did not assert a violation of his Eighth Amendment rights in the Louisiana state courts.  Moreover, although federal and state standards may be "somewhat similar", the United States Supreme Court has found that, for purposes of exhaustion of state court remedies, "mere similarity of claims is insufficient."  *Duncan,* 513 U.S. at 366 *citing Picard v. Connor,* 404 U.S. 270, 276 (1971) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  Likewise, the undersigned finds that mere similarity of claims is insufficient to set forth a claimed violation of federal rights.

offenses and that a miscarriage of justice will occur if this Court refuses to consider his federal Constitutional claims, the Court will address merits of  these claims below.

**Excessive Sentence - Eighth Amendment**

To the extent that petitioner is claiming that his punishment is excessive under the Eighth Amendment of the United States Constitution, petitioner's claim is without merit.  Petitioner does not appear to contend that his individual sentences are excessive, and, in any event, given that petitioner's ten and five year sentences are within the  statutory range of sentences for each count, they clearly are not.  Rather, petitioner appears to be arguing simply that his punishment as a whole was rendered excessive by the judge's order that the sentences be served consecutively, rather than concurrently.  However, petitioner cites no authority for the proposition that the imposition of consecutive sentences under similarly egregious facts is impermissible under the United States Constitution, and this Court, in its independent research, has located no such authority.  To the contrary, this Court has rejected a similar claim under the Eighth Amendment standard. *Benoit v. Cain*, 2009 WL 4572903, *21-22 (W.D. La. 009).  Accordingly, the undersigned finds that petitioner has not met his burden of proof with respect to this claim.

Moreover,  it is clear in this case, that under the Eighth Amendment standard, the imposition of consecutive, as opposed to concurrent sentences, does not constitute an unconstitutionally excessive sentence. The Eighth Amendment protects against cruel and unusual punishments. In order for the petitioner to establish cruel and unusual punishment in this case, he must establish that the punishment meted out to him was grossly disproportionate to the crimes he committed.  *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). If the contested sentences fall within the statutory limits, the sentences are entitled to a presumption of constitutionality and will not be upset unless the sentences are so disproportionate to the offenses as to be completely arbitrary and shocking. *Bonner v. Henderson*, 517 F.2d 135 (5th Cir. 1975).  In this regard, a "[court] must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 664 (1998), *overruled in part on other grounds by United States v. O'Brien*, 130 S.Ct. 2169, 2180 (2010), as stated in *United States v. Johnson,* 398 F. Appx 964, 968 (5th Cir. 2010); *see also Ewing*, 538 U.S. at 24-25; *Simon v. Cain,* 2014 WL 6909671, *23 (W.D. La. 2014).

Excessive sentence claims are analyzed as follows: First, a threshold comparison is made concerning the gravity of the offense against the severity of the sentence. If the sentence is grossly disproportionate to the severity of the offense, then and only then, the court compares the sentence in question to (1) sentences for similar crimes in the same jurisdiction, and (2) sentences for the same crime in other jurisdictions. *McGruder v. Puckett,* 954 F.2d 313 (5th Cir.), *cert. denied*, 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992).  If the court concludes in the first inquiry that the sentence is not "grossly disproportionate" to the offense the inquiry is finished. *United States v. Gonzales,* 121 F.3d 928, 943 (5th Cir. 1997), *cert. denied,* 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 664 (1998).  As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewinq, supra; Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

In the instant case, petitioner was convicted of three separate felonies involving the shooting, and attempted shooting, of three police officers.  In Louisiana, aggravated second degree battery is punishable by a term of imprisonment of not more than fifteen  years imprisonment for each count, and aggravated assault on a peace officer with a firearm is punishable by a term of

17

imprisonment of not less than one, nor more than ten years imprisonment. Petitioner's sentences on each count are well within the statutory limit. Thus, petitioner's consecutive sentences are presumptively constitutional.

Petitioner has not shown that his statutorily authorized sentences are "grossly disproportionate" to the crimes of conviction. In *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)*,* the Supreme Court upheld a life sentence under a recidivist statute for a petitioner who had fraudulently used a credit card, passed a forged check, and finally, obtained $120.75 under false pretenses.  Subsequent jurisprudence in this circuit has used *Rummel* as a benchmark for distinguishing constitutional sentences and grossly disproportionate punishments. *Gonzales,* 121 F.3d at 943; *Simon*, 2014 WL 6909671 at *23.

Measured against the *Rummel* benchmark, petitioner's twenty-five year sentence imposed in connection with petitioner's three felony convictions, all of which are within the statutorily prescribed limits, are plainly constitutional.  First, the gravity of the offenses committed by petitioner are clearly more severe than the crimes of fraud and forgery punished by life imprisonment in *Rummel*. Second, unlike the crimes at issue in *Rummel*, the crimes committed by petitioner, which involved the potential taking of human life, warrants the most severe punishment.

18

Accordingly, applying the benchmark test set forth in *Rummel,* the undersigned finds that the facts of this case do not meet the threshold level of gross disproportionality.  Since the sentences were not grossly disproportionate, further inquiry into the proportionality of the sentences is unnecessary. *Gonzales, supra*; *Smallwood v. Johnson*, 73 F.3d 1343, 1347-1348 (5th Cir.), *cert. denied*, 519 U.S. 883, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996).  Petitioner's sentences are consistent with the constitutional requirements of the Eighth Amendment. Petitioner is therefore  not entitled to relief in connection with his Eighth Amendment excessive sentence claim.

**Double Jeopardy**

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225 (1977) (citations omitted).  "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted, courts may not impose more than one punishment for the same offense. . . ." *Id.*  Thus, where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its

legislative authorization by imposing multiple punishments for the same offense. *Id. citing Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) and *Ex parte Lange*, 18 Wall. 163, 21 L.Ed. 872 (1874).[9]

The crimes for which petitioner was convicted and sentenced do not constitute a singular offense.  As found the Louisiana Third Circuit Court of Appeal in post-conviction proceedings, each crime involved a different victim and hence, constituted a separate offense subject to a separate punishment.  Thus, in this case, the state court did not exceed its legislative authorization; the court did not impose multiple punishments for the same offense, but rather imposed a separate sentence for each of petitioner's three separate offenses.  Accordingly, petitioner's sentences do not violate the Double Jeopardy Clause of the Fifth Amendment. *See Benoit v. Cain*, 2009 WL 4572903 at *21 (finding that 58

---

[9]The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . .

This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes . . . . " *Brown,* 432 U.S. at 2226 *quoting Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975).

consecutive two year sentences for separate offenses did not violate the Double

Jeopardy Clause).

## II.  Ineffective Assistance of Counsel

Petitioner contends that his counsel, Elizabeth Long, was ineffective

because she failed to pursue an insanity defense, which petitioner believes would

have exonerated him from criminal liability.  More specifically, petitioner

contends that since he was under the influence of drugs at the time of the offenses,

counsel should have raised an insanity defense based upon his voluntary

intoxication rendering him unable to distinguish right from wrong.

Petitioner argues that he raised this claim in the Louisiana state courts. [*See*

rec. doc. 31, pg. 4-6].   The Court disagrees.  Petitioner did not raise this exact

claim in post-conviction proceedings.  Rather, he raised a similar, but distinct

separate claim of ineffective assistance, arguing that counsel was ineffective for

failing to "adequately investigate the case" thereby prejudicing petitioner's "right

to a defense", further arguing that the outcome of the proceedings would have

been different "based on an investigation of the facts surrounding the Lack of

Evidence." [rec. doc. 33-1 pg. 146-147; *see also* pg. 215 (3rd Circuit writ

application)].  In short, petitioner failed to link these complaints to the assertion of

an insanity defense, or more specifically, to the failure of counsel to raise an

insanity defense.  Indeed, the Courts review of petitioner's state court pleadings reveals that they do not even contain the word "insanity."

Nevertheless, even if the claim had been raised, as held by the trial court in post-conviction proceedings with respect to petitioner's ineffective assistance of counsel claims, under Louisiana law, a "valid guilty plea operates as a waiver of all non-jurisdictional defects in proceedings that take place *prior* to the entry of the plea." *State v. Crosby*, 338 So.2d 584 (La. 1976); *State v. McKinney*, 406 So.2d 160, 161 (La. 1981); *State v. Jenkins*, 419 So.2d 463, 465 (La. 1098).  This includes pre-plea claims of ineffective assistance of counsel.  *Jenkins*, 419 So.2d at 465; *State v. Myles,* 882 So.2d 1254, 1261 (La. App. 3rd Cir. 2004) *citing  State v. Holder*, 771 So.2d 780, 781  (La.App. 3rd  Cir. 2000); *State v. Mellion*, 439 So.2d 586, 590 (La. App. 1st Cir. 1983), *writ denied*, 443 So.2d 1118 (La. 1984). The same is true under federal law.  *See United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir. 2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th  Cir. 1971) (noting that the defense of insanity at the time of the offense is a non-jurisdictional defect).  As set forth below, petitioner's guilty plea was knowingly, intelligently and voluntarily entered.  Therefore, to the extent that the present claim may arguably have been raised in state post-conviction proceedings, which does not appear to be the case, the entry of petitioner's plea waived his ineffective assistance of counsel claim.

The State has not expressly argued that this claim is traditionally or technically procedurally defaulted.[10]  Rather, the State erroneously argued only that this claim is untimely.  Given that in a separate claim petitioner has referenced *Martinez v. Ryan*[11] as providing cause for any defaulted ineffective assistance of counsel claim, the undersigned will address the merits of this claim.

For the reasons which follow, petitioner has not satisfied his burden under *Strickland* with respect to this claim. To prevail on an ineffective assistance of

---

[10]The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

[11]132 S.Ct. 1309 (2010). In *Martinez*, the Court recognized a narrow equitable exception to the rule of *Coleman v. Thompson* that attorney errors in post-conviction proceedings do not constitute cause for a procedural default, which is applicable in initial-review collateral proceedings where a prisoner had no counsel or counsel in that proceeding was ineffective.
    The Court notes that *Martinez* involved a traditional procedural default, not a technical procedural default as in this case, that is, a failure to raise the claim in the state courts, thereby never properly exhausting the claim and never providing the state court with the opportunity to correct the alleged constitutional violation. Thus, a strong argument can be made that *Martinez* does not apply in cases of technical procedural default, because to allow such application, would allow prisoners to evade exhaustion, thereby placing federal courts in the position of hearing ineffective assistance of counsel claims never before presented to the state courts.
    The Court further notes that the *Martinez* Court expressly avoided imposing a Constitutional ruling that appointed counsel be mandated for initial-review collateral proceedings.  However, allowing review of technically defaulted claims under the *Martinez* exception would necessarily result in exactly that circumstance.  The State would be placed in a position of either appointing post-conviction counsel for all prisoners or forever be barred from having the first opportunity to correct alleged Sixth Amendment constitutional errors.
    For these reasons, the Court does not believe that *Martinez* should be applied to excuse technical procedural defaults. However, the language of the *Martinez* decision does not expressly exclude this possibility.  Accordingly, given the State's failure to address the issue, out of an abundance of caution, the claim is addressed above.

counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[12] A reasonable probability is a probability

---

[12]The *Strickland* court outlined the extent of prejudice that must be established by the defendant: An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would

sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.  With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Glinsey,* 209 F.3d at 392 *quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).  Thus, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A petitioner must affirmatively prove prejudice.  *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062, 1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice.  *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of

---

have a reasonable doubt respecting guilt.
*Strickland, supra,* at pages 691-692.

counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998).  However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*"* *Green,* 160 F.3d at 1043.

Under Louisiana law, a defendants' voluntary intoxication or drugged condition provides a defense only to those crimes requiring specific intent, but provides no defense to general intent crimes.  La.R.S. 14:15;  *State v. Boleyn*, 328 So.2d 95, 98 (La. 1976).  The defense of insanity, however, may be employed as a defense to any category of crime.  La. R.S. 14:14; *State v. Scott*, 344 So.2d 1002, 1005 (La. 1977).

Attempted first degree murder of a peace officer is a specific intent crime punishable by imprisonment of not less than 20, nor more than 50, years without benefits.  *See* La. R.S. 14:27(A) and (D)(1)(b); *State v. Butler,* 322 So.2d 189, 192 (La. 1975).  Aggravated second degree battery and aggravated assault of a peace officer with a firearm are general intent crimes, punishable by no more than 15 years imprisonment, and not less than 1, nor more than 10, years imprisonment, respectively.  *See* La. R.S. 14:11;  La. R.S. 14:34.7;  La. R.S. 14:37.2.

26

To prove insanity, the defendant must demonstrate that "a mental disease or defect" rendered him "incapable of distinguishing between right and wrong" at the time of the offense.  *State v. Garner*, 890 So.2d 733, 735 (La. App. 2nd Cir. 2004) *quoting* La. R.S. 14:14.  A legal presumption exists that a defendant is sane and responsible for his actions at the time of an offense.  La. R.S. 15:432. To rebut that presumption and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. C. Cr. P. art. 652; *Garner,* 890 So.2d at 735 *citing State v. Silman*, 663 So.2d 27 (La. 1995) and *State v. Odom*, 760 So.2d 576 (La. App. 2nd Cir. 2000), *writ denied*, 794 So.2d 821 (La. 2001).

The determination of sanity is a factual matter.  *Garner,* 890 So.2d at 736 (citations omitted). All the evidence, including expert and lay testimony, along with the defendant's conduct and action, must be considered by the fact finder, which determines whether the defendant proved by a preponderance of the evidence that he was insane at the time of the offense.  *Id*.  Even if the experts conclude the defendant was insane, the issue is a matter for the jury to decide.  *Id*.

In this case, petitioner points to the statements of lay witnesses in the Louisiana State Police Report in support of his claimed insanity. [*See* rec. doc. 4-2, pg. 1-22].  Petitioner provides no expert evidence in support of his contention.

27

While some of the lay witnesses to the offense stated that petitioner was not "making sense", was "acting real strange" and "very bizarre", was indicating that he thought people were after him, and accordingly, expressed their belief that petitioner was hallucinating and may have been on drugs, the report also indicates that petitioner's conduct was consistent with the conclusion that petitioner's mental status did not prevent him from being aware of the difference between right and wrong.  The report indicates that petitioner initially complied with the orders given by Deputy Wiltz and Deputy Guidry, approaching the deputies, turning around and placing his hands behind his back, before turning to run away, lifting a shotgun and firing at them.   After petitioner was apprehended, petitioner advised officers of  the location of the home that he broke into to steal two shotguns, describing in detail the manner in which he entered the home.  He additionally indicated that he understood his rights and refused to answer the officers' questions.

Given these facts and the absence of any expert evidence, coupled with the legal presumption of sanity, on the record before this court, the Court cannot find that an insanity defense would have been successful had such a defense been asserted.  Petitioner's allegations of a mere possibility of a different outcome are insufficient to establish prejudice.  *Lamb*, 179 F.3d at 359.  Therefore, the Court cannot find that petitioner has affirmatively proven prejudice as a result of counsel's failure to raise an insanity defense.  *Deville*, *Mangum* and *Earhart,*

*supra.*  Petitioner has not met his burden under the second *Strickland* inquiry.  He is therefore not entitled to any relief on this claim.

## III. Validity of Plea

A  court may not accept a guilty plea unless the defendant enters the plea voluntarily and with a complete understanding of the nature of the charge and the consequences of his plea.  This standard is rooted in the Due Process Clause of the Constitution.  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *modified on other grounds*, 646 F.2d 902 (5th Cir.), *cert. denied*, 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981) *citing McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970) and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).   A federal *habeas* court will uphold a guilty plea if the "defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so . . . ."  *DeVille v. Whitley,* 21 F.3d 654, 657 (5th Cir. 1994) *citing Frank,* 646 F.2d at 882 and *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.), *cert. denied,*  474 U.S. 838, 106 S.Ct. 117 (1985).

For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must understand both the true nature of the charge against him and "the consequences" of a guilty plea,  respectively.  *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991); *United States v. Pearson,* 910 F.2d 221, 223 (5th Cir.

29

1990), *cert. denied*, 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991).  The

defendant need only understand the direct consequences of the plea; he need not

be made aware of every consequence that, absent a plea, would not otherwise

occur." *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000).

A plea is intelligent if the defendant understood the nature and substance of

the charges against him and not necessarily whether he understood their technical

legal effect. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) *citing Taylor v.

Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*,  503 U.S. 988, 112 S.Ct.

1678, 118 L.Ed.2d 395 (1992).  The defendant must understand what he is being

charged with.  *United States v. Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998).

With respect to guilty pleas, the "knowing" requirement that a defendant

understand "the consequences" of a guilty plea means only that the defendant

know the maximum prison term and fine for the offense charged.  *United States v.

Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) *citing Barbee v. Ruth,* 678 F.2d 634, 635

(5th Cir. 1982), *cert. denied*, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982);

*Ables v. Scott*, 73 F.3d 591, 592-93 n. 2 (5th Cir. 1996), *cert. denied*,  517 U.S.

1198, 116 S.Ct. 1696, 134 L.Ed.2d 795 (1996) *citing United States v. Rivera*, 898

F.2d 442, 447 (5th Cir. 1990).

"[A] plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." *Hernandez,* 234 F.3d at fn. 3.

In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969), the United States Supreme Court found that the waiver of three constitutional rights, to trial by jury, to confront one's accusers, and against compulsory self-incrimination, cannot be presumed from a silent record. *Buckley v. Butler*, 825 F.2d 895, 899 (5th Cir. 1987) *citing Boykin*, 89 S.Ct. at 1712. Thus, in the context of a guilty plea, *Boykin* requires an affirmative showing on the record that the defendant has been informed of these three rights before accepting a guilty plea.  *Id.*

Petitioner asserts two claims aimed at the validity of his plea.  In his first claim, petitioner argues that his counsel was ineffective for failing to advise that petitioner would have been exonerated from criminal liability on grounds of insanity. In his second claim, petitioner argues that his counsel was ineffective for advising petitioner that he would receive no more than an 11 year sentence in exchange for his guilty plea.

**Sentencing Promise**

In his second claim, petitioner essentially argues that his guilty plea is invalid because counsel led  petitioner to believe that he would not receive more

31

than 11 years imprisonment in exchange for his guilty plea. The trial court rejected petitioner's claim finding that petitioner indicated at his plea hearing "that he was entering the plea agreement willingly and voluntarily and that no threats or promises other than the plea agreement had been made to him."  The Third Circuit held that petitioner "failed to prove there was a plea agreement as to the sentences he would receive or that he was lead to believe he would receive a specific sentence."  Under the appropriate standard of review, the state courts' determination should not be disturbed.

Petitioner's claim is foreclosed by Fifth Circuit precedent which holds that as long as the defendant is advised of the maximum penalty which can be imposed, an attorney's erroneous prediction is insufficient basis to render a guilty plea unknowing or involuntary.  *See United States v. Pearson*, 910 F.2d 221 (5th Cir. 1990); *United States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993).

In *Gracia*, the defendant claimed that he had relied on his attorney's erroneous prediction of what his sentence would be. *Gracia*, 983 F.2d at 629.  The Fifth Circuit denied the defendant relief, holding that because the "court [had] properly advised the defendant about the possible maximum penalty" the attorney's erroneous prediction was "not a sufficient basis to set aside a guilty plea." *Id. citing United States v. Jones*, 905 F.2d 867, 868 (5th Cir. 1990); *see also United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) ("[R]eliance on the

32

erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary. As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences.").

In the present case, before accepting petitioner's guilty plea, the Court advised petitioner of the nature of the charges to which he would plead guilty and expressly informed petitioner of the maximum penalty for both charges, a fine of not more than $10,000.00 and imprisonment for not more than 15 years, or both and a fine of not more than $5,000 and imprisonment for not less than 1, nor more than 10 years, or both, respectively;  petitioner expressly and  unambiguously acknowledged, while under oath, that he understood the charges and the maximum penalty which could be imposed for those charges. [rec. doc. 33-1, pg. 47-48]. Because petitioner knew the maximum possible sentence to which he might have been subjected and his actual sentence did not exceed the maximum allowable, petitioner's  plea was voluntary and his contention that he was denied effective assistance of counsel necessarily fails. *See United States v. Smith,* 2015 WL 6438874, *5 (W.D. La. 2015) *citing United States v. Hargrave,* 2015 WL 1423067, *6-7 (W.D. La. 2015) (rejecting a similar claim of ineffective assistance of counsel) (and cases cited therein).

Although a guilty plea may be invalid if induced by unkept promises, as was

noted by the trial court in post-conviction proceedings, this claim is contrary to

petitioner's sworn statements in open court during his plea colloquy and the plea

agreement signed by petitioner in connection with his plea.  Furthermore, as noted

by the Third Circuit, petitioner failed to prove that he was lead to believe that he

would receive a specific sentence.  The state court  record simply does not support

petitioner's belated allegations that counsel led him to believe that a lesser

sentence would be imposed or that he did not know that the Court could impose a

greater sentence.  To the contrary, the state court record refutes petitioner's

contentions.

A defendant ordinarily will not be heard to refute his testimony given at a

plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110

(5th Cir. 1998) *citing United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).

"Solemn declarations in open court carry a strong presumption of verity," forming

a "formidable barrier in any subsequent collateral proceedings."  *Id*. *quoting*

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136

(1977).  Moreover, any documents signed by the defendant in connection with a

guilty plea are entitled to "great evidentiary weight."  *United States v. Abreo*, 30

F.3d 29, 32 (5th Cir. 1994).

34

The trial court verified that petitioner understood the "open ended" nature of the plea deal explaining that "there has been no agreement as to what your sentence will be" and that he (the judge) would consider a pre-sentence investigation report which was ordered to be prepared, and evidence presented by State and petitioner at a sentencing hearing to "decide the appropriate sentence." Petitioner acknowledged his understanding and further acknowledged that he was satisfied with that procedure. [rec. doc. 33-1, pg. 48].  The Court also verified that petitioner understood that even if "it looks like you're going to get more time than you thought you were going to get, [once his plea is accepted] it's going to be too late for you to change your mind." [*Id*. at pg. 50].   Petitioner acknowledged, in writing, his understanding of the open ended nature of his plea, and his agreement to that arrangement in the "Certificate Outlining Felony Plea Agreement" signed by petitioner, his attorney and the Assistant District Attorney on the date petitioner's guilty plea was entered. [*Id*. at pg. 33].  The Court verified twice that petitioner had no questions about the Plea Agreement or the sentencing procedure. [*Id*. at pg. 49-50].  Finally, the Court expressly confirmed that no one had made "any promises of any kind or threats of any kind to get [petitioner] to plead guilty other than the plea agreement", to which petitioner unambiguously stated, while under oath, "No, sir." [*Id*. at pg. 50].

In sum, petitioner's sworn testimony and the lack of any indication in the state court record substantiating petitioner's allegations clearly refute petitioner's claim that counsel advised petitioner that he would receive no more than an 11 year sentence in exchange for his guilty plea, or that he was induced, in any way, by his attorney to plead guilty.[13]  This is particularly true given that in his pleadings to this Court petitioner has not consistently stated the alleged promise, at times alleging that counsel promised no more than fifteen years imprisonment [rec. doc. 1, pg. 6, ¶ 12 Ground Two, (a)] and at other times stating the he was promised no more than eleven years [rec. doc. 4, pg. 22].

The state court record is clear and unambiguous.  Petitioner's sworn testimony and his execution of the Certificate Outlining Felony Plea Agreement on the date petitioner's plea was entered, are afforded controlling weight on this issue.[14] *Cervantes, Blackledge* and *Abreo, supra*.  As such, counsel cannot be

---

[13]The undersigned notes that petitioner submitted the February 16, 2011 affidavit of his mother, Elaine Theriot, to the State court in connection with his post-conviction application. [rec. doc. 33-1, pg. 159].  This affidavit does not support petitioner's present claim.  The affidavit merely states that "[b]efore his sentencing" defense counsel said that she and the assistant district attorney had agreed on "an eleven year sentence or hopefully a minimum of 5 years with rehabilitation." This statement, however, provides no support for finding petitioner's plea, entered three months earlier, was invalid.

Although petitioner presents the April 15, 2015 "Supplemental Affidavit" of his mother to this Court in support of his claim [rec. doc. 4-2, pg. 37], that affidavit was not presented to the state courts and places petitioner's claim in a significantly different legal posture.  Accordingly, this Court is precluded from considering it*. Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398-1399, 1401, 179 L.Ed.2d 557 (2011); *Lewis v. Thaler*, 701 F.3d 783, 789- 792 (5th Cir. 2012) *citing Pinholster, supra.*

[14]A defendant must provide more than conclusory allegations unsupported by specifics in order to be entitled to *habeas* relief.  *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136

found in any way deficient.  *Strickland, supra*.  Additionally, in light of the colloquy between petitioner and the trial court, petitioner has failed to demonstrate any prejudice as a result of counsel's alleged actions; petitioner has not shown "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Glinsey*, 209 F.3d at 392; *Sayre*, 238 F.3d at 635; *See also Green,* 160 F.3d at 1043; *Lamb*, 179 F.3d at 359.

Simply stated, petitioner's plea was knowingly, intelligently and voluntarily entered.  Petitioner's conclusory and unsubstantiated allegations of ineffective assistance of counsel warrant no relief.[15]

**Failure to Advise**

In his first claim for relief petitioner argues that his counsel's ineffectiveness rendered his plea is invalid because counsel failed to advise petitioner that he

---

(1977); *Young v. Herring*, 938 F.2d 543, 560 (5th Cir. 1991).  Unsubstantiated allegations with no indicia of reliability should be disregarded.  *Ross v. Estelle*, 694 F.2d 1008, 1011-1012 (5th Cir. 1983); *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 996).

[15]While petitioner does not expressly contend that his plea was invalid because he was not expressly advised that his sentences could be run consecutively, such a claim does not warrant federal *habeas* relief; the decision to run the sentences consecutively, as opposed to concurrently, is at the discretion of the Court, and thereby is not a direct or necessary consequence of the guilty plea.  *See Barbee*, 678 F.2d at 635 *citing Haynes v. Henderson*, 480 F.2d 550, (5th Cir. 1973) (agreeing with the district court that "[t]he Constitution does not require that, in order to understand the consequences of a plea of guilty, the accused must be informed by the trial court, or must otherwise know, whether or not sentences imposed for separate crimes will run consecutively or concurrently."); *U.S. v. Hernandez*, 234 F.3d 252, 256 (5th Cir. 2000).

would have been exonerated from criminal liability on grounds of insanity. Review of the state court record reveals that petitioner did not raise this claim on direct appeal or in post-conviction proceedings. Thus, the claim is technically procedurally defaulted.[16]

However, the State has not expressly asserted procedural default in its responsive pleadings.  Furthermore, petitioner has suggested that a  miscarriage of

---

[16]It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies.  28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999); *Whitehead v. Johnson,* 157 F.3d 384,387 (5th Cir. 1998).  In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of each of his claims to the state courts in a procedurally proper manner.  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  Moreover, each claim must be presented to the state's highest court, even when review by that court is discretionary.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999);  *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).  In Louisiana, the highest court is the Louisiana Supreme Court.
    The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Technical procedural default exists where the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.  In such a case, there is no difference between non-exhaustion and procedural default, and the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir. 1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Magouirk*, 144 F.3d at 358 *citing Coleman*, 501 U.S. at 731-33 and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th  Cir. 1998).
    This court may therefore refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or by showing that a miscarriage of justice will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565*; McCleskey v. Zant*, 499 U.S. 467, 493-495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 418; *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 107-108 (5th Cir. 1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir. 1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

justice will result from the denial of federal *habeas* review because he is actually

innocent by reason of insanity.[17]  Accordingly, the Court will address the claim on

the merits.

As set forth above, petitioner has not demonstrated that he would have been

exonerated on grounds of insanity.  Furthermore, petitioner has shown no

prejudice from counsel's alleged inaction.  More specifically, petitioner has failed

to show that counsel's performance adversely affected the outcome of his plea, or

that there is a reasonable probability that, but for counsel's alleged error, he would

not have pleaded guilty to the lesser charges of aggravated second degree battery

and aggravated assault and would have insisted on going to trial had counsel

advised petitioner of the potential availability of an insanity defense.  *Glinsey,* 209

F.3d at 392 *quoting Hill, supra.*

Petitioner was facing three attempted first degree murder charges, for which

he could have been sentenced to imprisonment for at least 20 years up to a

maximum of 50 years per count, essentially a life sentence.  Petitioner's counsel

was able to arrange a very favorable plea deal for petitioner, allowing him to plead

guilty to substantially lesser crimes, for which petitioner would not be exposed to

---

[17]*Martinez* offers petitioner no relief as the present potentially defaulted claim is not a claim of ineffective assistance of counsel, *per se*, but rather a claim directed at the validity of petitioner's plea.

virtual life imprisonment, wherein the maximum sentence for all three crimes, even if run concurrent, would not exceed the maximum penalty for a single count of attempted first degree murder.

Petitioner has not affirmatively alleged that he would not have pleaded guilty to the lesser crimes had he been informed by counsel of the possibility of an insanity defense.  On the record before this Court and under the circumstances of this case, this Court cannot find that there is a reasonable probability that but for counsel's alleged failure, petitioner would not have pleaded guilty to the lesser crimes pursuant to the favorable plea agreement negotiated by counsel, and would have instead insisted on going to trial as charged.  To the contrary, the Court finds that a criminal defendant in petitioner's situation would reasonably have agreed to the plea deal to avoid the severity of the potential sentences, notwithstanding the potential availability of an insanity defense.  Thus, petitioner has not affirmatively shown prejudice, and has not satisfied his burden under the second prong of *Strickland*.  Petitioner has therefore not demonstrated that his plea was rendered involuntary as a result of counsel's alleged ineffectiveness.  No relief is warranted on this claim.

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5ᵗʰ Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals.   **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 19th day of November, 2015.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**

COPY SENT:

DATE: ___11/19/2015_____
BY: _____EFA_____
TO: _____RTH_____
          pj

42